```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
EFROM J. GROSS, on behalf of himself
and all others similarly situated,

                        Plaintiffs,                MEMORANDUM
                                                   AND ORDER
        -against-
                                                   02 CV 4135 (RML)
WASHINGTON MUTUAL BANK, F.A.,
et al.,

                        Defendants.
---------------------------------------------------------X
```

LEVY, United States Magistrate Judge:

This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636. Plaintiff Efrom Gross ("plaintiff") moves to certify this case as a class action, pursuant to Fed. R. Civ. P. 23, and for preliminary approval of the parties' class action settlement agreement. The motion is unopposed. For the reasons stated below, the motion is granted.

## BACKGROUND AND FACTS

Plaintiff filed this case as a purported class action in July 2002, alleging that defendants sent collection letters that violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"). Plaintiff seeks only statutory damages. (See Plaintiff's Memorandum of Law, dated Sept. 30, 2004 ("Pl.'s Mem."), at 2.) The parties have now reached a settlement on a class basis.

Pursuant to 15 U.S.C. § 1692k(a)(2)(B), statutory damages in this case are capped at the lesser of $500,000 or one percent of defendants' net worth. It is undisputed that one percent of the net worth of defendant Washington Mutual Bank, F.A. ("Washington Mutual") meets the $500,000 cap. The settlement agreement requires defendant Washington Mutual to

establish a settlement fund in the amount of $350,000. (See Motion for Certification of a Settlement Class, Appendix I.) Each class member who sends in a claim form is expected to receive $325, and all class members have the right to exclude themselves from the settlement or object. (Id.) In addition, the settlement fund will pay all administrative expenses, including the costs of mailing and publishing notice, as well as plaintiff's attorney's fees and costs in the amount of $115,000. (Id.) The settlement fund will also pay plaintiff $5,000 as compensation for his service as class representative. (Id.)

## DISCUSSION

I. Motion for Class Certification

Plaintiff moves for certification of a class defined as:

> All borrowers of Dime Auto Finance who received a debt collection letter[s] from attorney Michael F. King during the period from July 22, 2001 through December 31, 2003.

(Proposed Order for Temporary and Conditional Certification of Settlement Class at 2.) In order to certify a class, a litigant must meet the four requirements of Fed. R. Civ. P. 23(a) and demonstrate that the proposed class action fits into one of the three categories described in Rule 23(b). See Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968). Although the plaintiff has the burden of proving that its proposed class is appropriate for certification (Harrison v. Great Springwaters of Am., No. 96-CV-5110, 1997 WL 469996, at *3 (E.D.N.Y. June 18, 1997)), the plaintiff is not obliged to make an extensive evidentiary showing in support of its motion. Jones v. Ford Motor Credit Co., No. 00 Civ. 8330, 2005 WL 743213, at *5 (S.D.N.Y. Mar. 31, 2005) (citing Follette v. Vitanza, 658 F. Supp. 492, 505 (N.D.N.Y. 1987), vacated in part on other grounds, 671 F. Supp. 1362 (N.D.N.Y. 1987)). Moreover, in considering a motion for class

certification, the court must assume the truth of the plaintiff's allegations. In re AMF Bowling Sec. Litig., No. 99-3023, 2002 WL 461513, at *3 (S.D.N.Y. Mar. 25, 2002) ("Although a court must conduct a rigorous inquiry in determining whether the requirements of Rule 23 have been satisfied, it must accept plaintiffs' allegations as true and refrain from conducting an examination of the merits when determining the propriety of class certification"); see also Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999); Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n. 15 (2d Cir. 1978); Ventura v. New York City Health and Hosps., Corp., 125 F.R.D. 595, 598 (S.D.N.Y. 1989); DeAllaume v. Perales, 110 F.R.D. 299, 305 (S.D.N.Y. 1986).

### A. The Requirements of Rule 23(a)

Rule 23(a) provides, in pertinent part:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Each of these requirements will be addressed in turn.

### 1. Numerosity Requirement – Rule 23(a)(1)

The numerosity requirement is satisfied when the class is large enough to make ordinary joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). The plaintiff is not obligated to identify the exact number of class plaintiffs (see Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993)), and "courts may 'make common sense assumptions' to support a finding of numerosity." Weissman v. ABC Fin. Servs., Inc., 203 F.R.D. 81, 84 (E.D.N.Y. 2001) (quoting

Pecere v. Empire Blue Cross and Blue Shield, 194 F.R.D. 66, 69 (E.D.N.Y. 2000)). However, a plaintiff seeking class certification bears the burden of showing some evidence of the number of class members or, at least, a reasonable estimate. See id. Generally, numerosity is presumed when a class comprises forty members or more. See id. (citing Robidoux, 987 F.2d at 936 (2d Cir. 1993)).

Here, the parties estimate that the class contains approximately 700 members. (Pl.'s Mem. at 4.) Where a class is this large, common sense dictates that joinder will be impracticable. The numerosity requirement is therefore met.

2. Commonality Requirement – Rule 23(a)(2)

To meet the commonality requirement, the plaintiff must demonstrate that common questions of law or fact are at the core of the cause of action. Fed. R. Civ. P. 23(a)(2). "In cases like this one 'where FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class.'" Harrison, 1997 WL 469996, at *3 (quoting D'Alauro v. GC Servs. Ltd., 168 F.R.D. 451, 456 (E.D.N.Y. 1996)). Whether the contents of the debt collection letter received by members of the prospective class violated provisions of the FDCPA is the overriding legal question in this case. Thus, the commonality requirement is met.

3. Typicality Requirement – Rule 23(a)(3)

The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re Drexel Burnham Lambert, 960 F.2d 285, 291 (2d Cir. 1992). Here, each of the potential class members received virtually identical form debt collection

letters, their claims arise from the contents of such letters, and these claims raise the same legal argument – that the contents violated the FDCPA.  Accordingly, the typicality requirement is met.

### 4. Fair and Adequate Protection of the Interests of the Class – Rule 23(a)(4)

Finally, to satisfy the fourth requirement of Rule 23(a), plaintiff must demonstrate that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequate representation" is a two-pronged inquiry: "[f]irst, class counsel must be qualified, experienced and generally able to conduct the litigation.  Second, the class members must not have interests that are antagonistic to one another."  Harrison, 1997 WL 469996, at *5 (quoting D'Alauro, 168 F.R.D. at 457).

Plaintiff has met the first prong of the inquiry.  Plaintiff's counsel, Lawrence Katz, submitted an affirmation demonstrating that counsel is sufficiently experienced in consumer class action litigation and has represented plaintiffs in class actions brought under the FDCPA. (Affirmation of Lawrence Katz, dated Jan. 31, 2006 ("Katz Aff.").)  See also Aramburu v. Healthcare Fin. Servs., No. 02 CV 6535, 2005 WL 990995, at *4 (E.D.N.Y.  Apr. 14, 2005) (granting class certification in FDCPA case where class was represented by current counsel). Thus, it appears that plaintiff's counsel will adequately represent the interests of the class. D'Alauro, 168 F.R.D. at 457 (citing Avila v. VanRu Credit Corp., No. 94-C-3234, 1995 WL 41425, at *9 (N.D. Ill.  Jan 31, 1995)).

Plaintiff has also met the second prong of the inquiry.  Plaintiff claims that there is no conflict or antagonism between the named plaintiff and the potential class members. "A number of courts that have considered . . . FDCPA class actions challenging form collection

letters have found named plaintiffs who received versions of the challenged collection letters to be adequate class representatives for purposes of Rule 23(a)(4)." Harrison, 1997 WL 469996, at *6 (citing Colbert v. Trans Union Corp., Civ. A. No. 93-6106, 1995 WL 20821 (E.D. Pa. Jan. 12, 1995); Carr v. Trans Union Corp., Civ. A. No. 94-0022, 1995 WL 20865 (E.D. Pa. Jan. 12, 1995); Beasley v. Blatt, No. 93 C 4978, 1994 WL 362185, at *4 (N.D. Ill. July 11, 1994)). As defendant has not raised any issue concerning the adequacy of either the class representative or of class counsel, there is no reason to question plaintiff's assertions. Accordingly, the adequacy of representation requirement is met.

### B. The Requirements of Rule 23(b)(3)

Once it is determined that a potential class satisfies the requirements of Rule 23(a), the class must be certified under one of the categories set forth in Rule 23(b). Rule 23(b)(3) allows for class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Factors relevant to the certification of a class action under Rule 23(b)(3) include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Id. Rule 23(b)(3) requires individual notice to class members and allows a class member to "opt out" of the class.

Plaintiff has demonstrated that the proposed class meets the requirements of Rule 23(b)(3). First, as discussed above, it is clear that questions of law and fact common to the members of the class predominate over any questions affecting only individual members. It has been recognized in this district that "'common questions of law and fact surrounding the contents and mailing of [standardized form debt collection] letters predominate over individual issues.'" Harrison, 1997 WL 469996, at *9 (quoting D'Alauro, 168 F.R.D. at 458). Here, the issue of defendants' liability is common to all members of the proposed class and clearly predominates. Consequently, the first prong of Rule 23(b)(3) is satisfied. Furthermore, the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Indeed, "[s]uits brought under the FDCPA . . . regularly satisfy the superiority requirement." In re Risk Mgmt. Alternatives, Inc., 208 F.R.D. 493, 507 (S.D.N.Y. 2002). Given the relatively small amount of money at stake when considering each claim separately, it is unlikely that class members would elect to file individual lawsuits against these defendants. It would also be terribly inefficient to maintain hundreds of lawsuits based on similar factual predicates and the same legal theories. Therefore, a class action is clearly the superior method for adjudicating this controversy, and plaintiff has satisfied both prongs of Rule 23(b)(3).

Having met the Rule 23(a) requirements of numerosity, commonality, typicality and adequate representation and having qualified under Rule 23(b)(3), the plaintiff class is hereby certified.

II. Preliminary Approval of the Settlement

A. Standards for Approval

Rule 23(e) requires court approval of a class action settlement. "The purpose of

[Rule 23(e)] is to protect the nonparty members of the class from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1797 (2d ed. 1986). Before a court can approve a settlement, it must insure that "the settlement is fair and . . . that the class members['] interests were represented adequately." In re Warner Communications Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986). By the same token, the law looks favorably upon class action settlements because avoiding a trial conserves scarce judicial resources. In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995).

The Second Circuit has identified nine factors that should be considered in determining the fairness of a proposed settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), abrogated on other grounds, Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000); see also County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1323-24 (2d Cir. 1990).

To the extent the court is able to weigh these factors prior to the class receiving

notice, I find the proposed settlement fair, reasonable and adequate. The litigation has already lasted over three years, and further prosecution of this action would take significantly more time for discovery, motions, trial preparation, trial itself, and appeal. Such protracted litigation would undeniably reduce the recovery and delay the payment of any judgment to the class members. See In re Marine Midland Motor Vehicle Leasing Litig., 155 F.R.D. 416, 419-20 (W.D.N.Y. 1994). Moreover, the parties have conducted substantial discovery and have engaged in mediation resulting in the proposed settlement. The litigation has thus proceeded to a stage at which counsel have demonstrated a thorough understanding of the complexity of the issues and the strengths and weaknesses of their respective claims, defenses and strategies. To prevail at trial, the class would have to prove that defendants violated the FDCPA. This is far from certain, and there is always a risk that the class could lose on this issue. See, e.g., Wilson v. Quadramed Corp., 225 F.3d 350 (3d Cir. 2000). In addition, even if the class prevails, the class members could be awarded less in damages than they will receive under the settlement. With respect to the reasonableness of the settlement fund in light of the best possible recovery, the court may give credence to the opinions of experienced attorneys in assessing this comparison. Orloff v. Syndicated Office Sys., Inc., No. Civ.A.00-CV-5355, 2004 WL 870691, at *7 (E.D. Pa. Apr. 22, 2004). Here, class counsel asserts that the value of the proposed settlement outweighs the mere possibility of future relief. (Pl.'s Mem. at 10-11.) In sum, considering the risks, delays and expenses associated with trial, the proposed settlement is well within the range of reasonableness.

      B. <u>Attorney's Fees and Incentive Award to the Named Plaintiff</u>

Under 15 U.S.C. § 1692k(a)(3), a successful plaintiff is entitled to a reasonable

attorney's fee. The settlement agreement provides for Katz & Kleinman PLLC, as class counsel, to be awarded attorney's fees and costs in the amount of $115,000, and for the named plaintiff to receive an incentive award of $5,000. These fees are separate and apart from the amounts to be paid to the class members. (Pl.'s Mem. at 12.)

In approving attorney's fees in a class action settlement, the court must be mindful that it acts as a fiduciary that must protect the interests of the class and be certain of avoiding even the appearance of providing windfall fees to attorneys. See City of Detroit v. Grinnell Corp., 495 F.2d at 469 ("For the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the court should avoid awarding windfall fees and that they should likewise avoid every appearance of having done so.") (internal quotation omitted). Courts in this circuit consider the following factors:

> (1) time and labor expended by counsel; (2) magnitude and complexity of the litigation; (3) risk of the litigation; (4) quality of the representation; (5) requested fee in relation to the settlement; and (6) public policy considerations.

In re Warner Communications Secs. Litig., 618 F. Supp. 735, 746-47 (S.D.N.Y. 1985); see also City of Detroit v. Grinnell Corp., 495 F.2d at 470. Here, the submission in support of the fee petition demonstrates that plaintiff's counsel expects that at the completion of this case the firm will have expended approximately 140 hours of attorney time at the rate of $400 per hour. (Katz. Aff. ¶ 5.) Using the lodestar method of calculating fees, that brings the total to $56,000. Plaintiff's counsel seeks a lodestar multiplier of $59,000, or more than one hundred percent, based on "the unusually high amount recovered for the class and the fact that the attorney fees are contingent upon a successful conclusion." (Id.)

The lodestar multiplier aims to account for the contingent nature or risk involved

in a particular case and the quality of the attorneys' work. Rite Aid Sec. Litig., 396 F.3d at 305-06. Courts apply a multiplier to the lodestar calculation for any number of reasons, *e.g.*, to reflect the risk of nonrecovery; to act as an incentive for the bringing of socially beneficial litigation; or to reward counsel for an exceptional result. In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 340 (3d Cir. 1998). The type of litigation undertaken by class counsel here, which addresses important consumer concerns that would likely be ignored without such class action lawsuits, must be encouraged. I therefore find the multiplier reasonable.

Based on the written materials submitted, the court's dealings with counsel at several conferences, and the information submitted regarding counsel's prior experience with FDCPA litigation in federal court, I find that the quality of representation of the plaintiff class has been satisfactory and that counsel's hourly rate is reasonable. For all of these reasons, and in the absence of any objection, I find that the requested amount of $115,000 in attorney's fees is justified.

Finally, the settlement agreement awards the representative plaintiff $5,000 in recognition of his efforts on behalf of the class. This award is consistent with the range of awards made in favor of class representatives in similar cases. See, e.g., Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 118 (E.D. Pa. 2005) (noting that the $5,000 to be awarded to each of the three named plaintiffs was "in line with awards in similar class action litigation"); Orloff, 2004 WL 870691, at *7 (approving award of $5,000 to class representative as part of a FDCPA class action settlement). Therefore, the court approves the $5,000 incentive award for the named plaintiff.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification and preliminary approval of the class action settlement agreement is granted.

SO ORDERED.

Dated: Brooklyn, New York
February 8, 2006

/s/
ROBERT M. LEVY
United States Magistrate Judge